UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAREE R. HILLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:24-cv-00003-SRC |
| LELAND DUDEK, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## Memorandum and Order

Sharee Hills seeks judicial review, under 42 U.S.C. § 405(g), of the Commissioner of Social Security's final decision denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act. The Court affirms the Commissioner's decision.

### I. Procedural history

In 2021, Hills protectively filed applications for disability insurance benefits, Tr. 184–87, and supplemental security income, Tr. 188–95. The Social Security Administration denied her applications on initial review, Tr. 119–27, and on reconsideration, Tr. 131–38. Upon Hills's request, an Administrative Law Judge held a hearing. Tr. 139–40, 33–79. Hills testified during the hearing. Tr. 47–74. Following the hearing, the ALJ denied Hills's applications. Tr. 10–22. Hills then sought review of the ALJ's decision by the Appeals Council, but it denied Hills's request. Tr. 1–3. The

---

[1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 17, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), the Court "automatically substitute[s]" Leland Dudek for Martin O'Malley as the defendant in this suit. Neither party need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

ALJ's decision, therefore, is the final decision of the Commissioner that this Court reviews. *See* 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

## II. Standard for determining disability under the Act

Under the Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step evaluation when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *Id.*

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment" that "'significantly limits [the] [claimant's] physical or mental ability to do basic work activities.'" *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (second alteration in original) (quoting 20 C.F.R. § 416.920(c)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (first citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); then citing *id.* at 158 (O'Connor, J.,

concurring); and then citing 20 C.F.R. § 404.1521(a)); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1520a(d), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), 404.1545(a)(5)(i), 416.945(a)(5)(i). RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While RFC must be "based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (quoting *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009)), RFC is nonetheless an administrative assessment—not a medical assessment—and, therefore, "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC," *id.* Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (first citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013); and then citing *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012)).

3

Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination[] if necessary, and making every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of producing evidence showing that the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932 (citing *Goff*, 421 F.3d at 785).

## III.    The ALJ's decision

Applying the foregoing, the ALJ concluded that Hills had "not been under a disability within the meaning of the Social Security Act from December 13, 2017, through" May 3, 2023. Tr. 11, 22. After determining that Hills had engaged in substantial gainful activity from February 1, 2019, through February 28, 2020, but also determining that Hills had not engaged in substantial work activity for "continuous 12-month periods," the ALJ considered whether Hills had any severe

4

impairments. Tr. 12–13. He concluded that she had several severe impairments, including post-traumatic brain injury, post-traumatic stress disorder, major depressive disorder, bipolar disorder, intermittent explosive disorder, and panic disorder. *Id.* The ALJ then considered whether Hills's impairments individually, or in combination, met, or medically equaled, any of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926. Tr. 13–15. He concluded that they did not. *Id.*

Next, the ALJ determined Hills's RFC by considering all evidence in the record. Tr. 15–20. The ALJ concluded that Hills had the RFC "to perform light work as defined in" sections 404.1567(b) and 416.967(b), except that Hills "must avoid ladders, ropes, or scaffolds, must avoid hazards such as unprotected heights and dangerous moving machinery, and must avoid more than moderate noise levels and bright light situations (including working outside)." Tr. 15. Further, the ALJ found that Hills "wa[s] capable of simple, non-detailed and non-complex job tasks, in a setting with little to no changes in the work routine from day to day, little to no independent judgement required, and no fast-paced production rate demands or quotas." *Id.* Hills "c[ould] have occasional interaction with coworkers and supervisors (but no close tandem work with others)," the ALJ determined, "and she should avoid jobs that require interaction with the general public, but incidental contact with the public would be acceptable." *Id.*

The ALJ then determined that Hills "[wa]s unable to perform any" of her "past relevant work." Tr. 21. Finally, the ALJ concluded that, considering Hills's "age, education, work experience, and" RFC, "there are jobs that exist in significant numbers in the national economy that" Hills "c[ould] perform. *Id.* Specifically, the ALJ explained that a vocational expert testified that Hills "could perform the requirements of representative occupations such as" a housekeeping cleaner,

a cafeteria attendant, and a packer.  *Id.*  Accordingly, the ALJ rendered his decision:  Hills was "not disabled."  Tr. 22.

IV. **Standard of review**

When a claimant seeks judicial review of the Commissioner's decision, the Court determines whether substantial evidence on the record as a whole supports his decision.  42 U.S.C. §§ 1383(c)(3), 1405(g).  If it does, the Court must affirm the decision.  *Id.*  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*  Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citing *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015)).

The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  *Id.* (quoting *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)).  The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'"  *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

V. **Discussion**

Hills requests that the Court remand this case for two reasons.  First, she argues that the ALJ failed to "identif[y] or resolve[]" an alleged conflict between language in the RFC and "the definition of Reasoning Level 2 jobs per the DOT," specifically the "cafeteria attendant and packer jobs."

Doc. 12 at 5.² Because "the ALJ's RFC . . . limited [Hills] to . . . 'non-detailed' job tasks," *id.* at 4 (quoting Tr. 15), which "restrict[ed her] to [Reasoning] Level 1 . . . jobs," *id.*, she contends that the ALJ erred by "conclud[ing] that . . . [she] could perform" the jobs of "cafeteria attendant and packer," *id.* at 5 (citing Tr. 21), which "are Reasoning Level 2 jobs," *id.* The Commissioner argues in response that "the Court need not address [Hills]'s arguments concerning these reasoning level 2 jobs because the reasoning level 1 housekeeping cleaner does not conflict with the limitation to non-detailed tasks." Doc. 13 at 3. Hills "does not dispute," the Commissioner underscores, "that reasoning level 1 housekeeping cleaner does not conflict with the limitation to non-detailed tasks." *Id.*

And second, Hills argues that the ALJ did "not explain how he resolved the apparent conflict between his RFC limitation for no interaction with the general public and the DOT's description of the housekeeping cleaner job," which "requir[es] that the employee 'renders personal assistance to patrons.'" Doc. 12 at 6. Hills's theory goes like this. "[T]he ALJ's RFC . . . limited [her] to no interaction with the general public, except 'incidental contact.'" *Id.* (quoting Tr. 15, 76). But "the job of housekeeping cleaner . . . requires that the employee 'renders personal assistance to patrons.'" *Id.* (quoting Dictionary of Occupational Titles (DOT) 323.687-014, 1991 WL 672783 (Jan. 1., 2016)). Therefore, Hills contends that the ALJ needed to "explain[] in his decision how a job that require[d] the employee to 'render personal assistance to patrons' c[ould] be performed if the employee c[ould not] interact with patrons (i.e., the public)," *id.* (quoting Tr. 22), and he did not, *see id.*

In response, the Commissioner explains that Hills "incorrectly asserts [that] housekeeping cleaner conflicts with the ALJ's limitation to 'avoid jobs that require interaction with the general

---

² The Court cites to page numbers as assigned by CM/ECF.

public,'" doc. 13 at 3 (quoting doc. 12 at 6), because, although "the description notes render personal assistance to patrons as among the duties that housekeeping cleaners could perform in any combination with the others listed, not all workers will be required to render personal assistance to patrons," *id.* at 3–4. Likewise, the Commissioner argues that "the ALJ's RFC explicitly allowed for incidental contact with the public." *Id.* at 4 (citing Tr. 15, 76). The Commissioner also highlights evidence in the record where the ALJ addressed potential contacts as part of the housekeeping-cleaner job: "the ALJ inquired of the [vocational expert] by providing the examples of, 'a customer asking for another bar of soap or asking where the potatoes are,' as potential incidental contacts, and the [vocational expert] responded[,] indicating that housekeeping cleaner would allow such contacts." *Id.* (quoting Tr. 76–77). "When asked whether [the vocational expert's] testimony was consistent with the DOT," the Commissioner explains that "the [vocational expert] noted the DOT does not address 'the amount and quality of interaction with others.'" *Id.* (quoting Tr. 77). Therefore, the ALJ concluded that "the [vocational expert] resolved any conflict regarding public contact." *Id.* For the following reasons, the Court agrees with the Commissioner on both scores.

For starters, the Court finds that no conflict exists between the RFC's language and the ALJ's determination that Hills could perform the cafeteria attendant and packer jobs—*i.e.*, Reasoning Level 2 jobs. *See Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (determining that "[t]here is no direct conflict between 'carrying out simple job instructions' for 'simple, routine and repetitive work activity,' . . . and the vocational expert's identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate"); *Galloway v. Kijakazi*, 46 F.4th 686, 689–90 (8th Cir. 2022) (rejecting plaintiff's argument that the RFC, which limited plaintiff "to simple, unskilled work," conflicted with the ALJ's determination that plaintiff could do multiple

8

Reasoning Level 2 jobs). The plain language of the RFC and the definition for Reasoning Level 2 jobs further buttress the absence of any direct conflict between the two. *Compare* Tr. 15 (describing Hills's capability in the RFC as including "simple, non-detailed and non-complex job *tasks*" (emphasis added)), *with* DOT app. C, 1991 WL 688702 (Jan. 1., 2016) (defining Reasoning Level 2 jobs, in part, to include "carry[ing] out detailed but uninvolved written or oral *instructions*" (emphasis added)). Also, because "the Level 2 reasoning definition is an upper limit across all jobs in the occupational category, not a requirement of every job within the category," Hills's "reliance on the DOT as a definitive authority on [the Reasoning Level 2] job requirements is misplaced." *Moore*, 623 F.3d at 604 (citation omitted).

Moreover, the ALJ's phrasing in the RFC did not relegate Hills, exclusively, to Reasoning Level 1 jobs. *See* Tr. 15. Nor did it forbid Hills from performing any Reasoning Level 2 jobs. *See id.*; *see also Moore*, 623 F.3d at 604 (noting that "the ALJ did not . . . indicate that [the plaintiff] could perform only occupations at a DOT Level 1 reasoning level"). Likewise, nothing in the vocational expert's testimony limited Hills to Reasoning Level 1 jobs or, conversely, excluded Hills from Reasoning Level 2 jobs. *See* Tr. 74–78. What is more, the vocational expert confirmed at Hills's hearing that his testimony did not "conflict with anything in the DOT." Tr. 77. Therefore, substantial evidence supported the ALJ's determination that Hills could perform the cafeteria attendant and packer jobs. *See Moore*, 623 F.3d at 604–05; *Galloway*, 46 F.4th at 689–90; *see also Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (affirming lower court's decision affirming ALJ's denial of benefits because any "error . . . was harmless, since no such conflict[s] appear[] to exist").

As for Hills's second point, her strict "reliance on the DOT as a definitive authority on [the] job requirements" for the housekeeping cleaner job "is misplaced," because "DOT definitions are

9

simply generic job descriptions . . . ." *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997) (citation omitted). "The DOT itself cautions that its descriptions 'may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities.'" *Id.* (citation omitted). "In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT." *Moore*, 623 F.3d at 604 (emphasis omitted) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000)); *see also* SSR 00-4P (S.S.A.), 2000 WL 1898704, at *3 (Dec. 4, 2000) ("The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A [vocational expert] may be able to provide more specific information about jobs or occupations than the DOT.").

Here, the ALJ's decision and the evidence in the record belie Hills's assertion that the ALJ failed to reconcile how "a job that require[d] the employee to 'render personal assistance to patrons' c[ould] be performed if the employee c[ould not] interact with patrons (i.e., the public)." Doc. 12 at 6 (quoting Tr. 22). As an initial matter, the RFC does not state that Hills "cannot interact with patrons," or must have "no interaction with the general public," as she suggests. *Id.* Instead, the ALJ determined that, although Hills "should avoid jobs that require interaction with the general public, . . . incidental contact with the public *would be acceptable*." Tr. 15 (emphasis added); *see also* Tr. 19 (noting that Hills's "ability to go to a public gym to exercise . . . is consistent with a conclusion that she can sustain work with the social limitations included in the [RFC]").

But more importantly, at Hills's hearing, the ALJ and vocational expert pressure-tested "the limitation on interaction with the public" with examples like "a customer asking for another bar of soap or asking where the potatoes are." Tr. 76. In response, the vocational expert confirmed that the housekeeping-cleaner job was consistent with Hills's limitation to "incidental contact with the public." Tr. 77. The vocational expert further explained that the DOT "does not address . . . the

10

amount and quality of interaction with others." Tr. 77. And, he "base[d his] opinion on [his] experience, training, and education as a vocational counselor over the last 31 years." *Id.* Because "the ALJ properly relied on the [vocational expert's] testimony," no unresolved conflict existed between the ALJ's RFC and the DOT definition for the housekeeping-cleaner job. *Moore*, 623 F.3d at 605; *see* SSR 00-4P, 2000 WL 1898704, at *3. Therefore, substantial evidence supports the ALJ's decision.

## VI. Conclusion

For the reasons explained above, the Court affirms the Commissioner's decision and dismisses with prejudice Hills's [1] Complaint. A separate Judgment accompanies this Memorandum and Order.

So ordered this 17th day of March 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE